IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| BRIAN DONALD, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 3:24-cv-00243-LMM |
| TOPPAN USA, INC., | : | |
| Defendant. | : | |

**ORDER**

This is an action for employment discrimination. Plaintiff Brian Donald asserts claims against his former employer, Defendant TOPPAN USA, Inc., for violation of the Americans with Disabilities Act, as amended by the Americans with Disability Act Amendments Act ("ADA"); the Family and Medical Leave Act ("FMLA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and 42 U.S.C. § 1981.

The matter is presently before the Court on Defendant's motion for summary judgment, Dkt. No. [30]; the Magistrate Judge's Report and Recommendation, in which the Magistrate Judge recommends granting the motion and dismissing Plaintiff's claims, Dkt. No. [40]; and Plaintiff's objections

to the Report and Recommendation, Dkt. No. [42]. Upon due consideration, the Court enters the following Order.

# I. LEGAL STANDARDS

## A. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light

most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

### B. Report and Recommendation

De novo review of a Report and Recommendation is required when "a proper, specific objection to the magistrate judge's report is made." Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006) (citing Stokes v. Singletary, 952 F.2d 1567, 1576 (11th Cir. 1992)); accord 28 U.S.C. § 636(b)(1). Otherwise, the district court need only satisfy itself that there is no clear error on the face of the record in order to accept the Magistrate Judge's recommendation. Merchant v. Nationwide Recovery Serv., Inc., 440 F. Supp. 3d 1369, 1371 (N.D. Ga. 2020) (citing Macort, id.).

## II. BACKGROUND

### A. Facts[1]

Defendant is a manufacturer of film barriers for consumer products in the pharmaceutical, medical device, and food industries. Dkt. No. [38-3] ¶ 1. Defendant hired Plaintiff, an African-American man, on August 1, 2016, as an operator at its plant in Griffin, Georgia. Id. ¶¶ 3, 6. Plaintiff was assigned to operate the slitter machine. Id. ¶ 3.

In November 2019, Plaintiff requested intermittent leave under the FMLA to care for his wife, who had been diagnosed with breast cancer. Id. ¶¶ 9, 10. His request was granted, and he was allowed a 12-month period to take intermittent FMLA leave. Id. ¶ 11. He submitted recertification paperwork in 2020, 2021, 2022, and 2023, and was approved each time. Id. ¶ 12.

Over the course of his employment with Defendant, Plaintiff was promoted to Senior Operator in 2018, Supervisor Trainee in March 2020, and Production Supervisor in 2021. Id. ¶ 4. He was also able to use FMLA leave to care for his wife without issue. Id. ¶ 14.

By 2023, Plaintiff was one of four production supervisors reporting directly to Johnnie Osborne, Director of Operations. Id. ¶ 7; Dkt. No. [39-1] ¶ 9.

---

[1] For the purposes of this Order, the Court views the facts and draws all reasonable inferences in favor of Plaintiff, the non-moving party. See N. Shore Med. Center, Inc. v. Cigna Health & Life Ins. Co., 68 F.4th 1241, 1243 (11th Cir. 2023). The Court largely limits its consideration of the facts to those set out in the statements of material fact. See Fed. R. Civ. P. 56(c)(3). It may, however, consider other evidence of record. Id.

Mr. Osborne was aware of Plaintiff's wife's health condition, and he received notice every time Plaintiff took FMLA leave. Dkt. No. [39-1] ¶ 12; Deposition of Johnnie Osborne ("Osborne Dep."), Dkt. No. [34], at 82.[2]

In May 2023, Plaintiff's wife's condition worsened. Dkt. No. [39-1] ¶ 23. As a result, Plaintiff began taking more time off from work, using more than 110 hours of FMLA leave in May 2023 alone. Id. ¶ 23. Although Defendant, as a matter of policy, did not like employees' leave balances to be negative by more than 40 hours, Plaintiff's leave balance was negative by 65 hours by May 8, 2023, because Mr. Osborne was letting Plaintiff use vacation time so that he would be paid for his FMLA leave hours. Id. ¶¶ 25, 27.

On June 2, 2023, Plaintiff submitted a request for several new FMLA dates. Id. ¶ 33; Dkt. No. [33-2] at 11-19. That month, he used FMLA leave on June 1, 6, 9, 14, 15, 19, and 23, including the whole day on the 19th. Dkt. No. [39-1] ¶¶ 34, 35; Dkt. No. [33-1] at 44. He also used FMLA leave on July 3, 7, 8, and 13. Dkt. No. [39-1] ¶ 48.

On July 13, 2023, Mr. Osborne terminated Plaintiff's employment in a reduction in force ("RIF"). Dkt. No. [38-3] ¶ 36; Dkt. No. [39-1] ¶ 49. Fourteen other employees were also terminated in the RIF. Dkt. No. [38-3] ¶ 24. Among Plaintiff's peers, two of the other production supervisors (Tom Lester and Shaun Oldham, both white men) were retained in their positions, and the third (Thomas

---

[2] Deposition citations refer to the page assigned by the court reporter who transcribed the deposition, not the Court's CM/ECF system.

Raines, an African-American man) was demoted to Senior Operator. Id. ¶ 6; Dkt. No. [39-1] ¶¶ 43-46. Cortez Lemons, a senior operator, was also retained in a senior operator position.[3] Dkt. No. [39-1] ¶ 46. At Plaintiff's termination meeting, Mr. Osborne told him he was included in the RIF because he had the least seniority of the production supervisors. Id. ¶ 50.

Defendant subsequently ceased all operations through a temporary plant closure that spanned from July 16, 2023, through September 4, 2023. Dkt. No. [38-3] ¶ 19. In March 2024, 38 more employees were laid off, leaving only 11 essential personnel to facilitate office-business needs, sales, customer issues, and maintenance of the plant, machines, and remaining product. Id. ¶ 40.

### B. Procedural History

On December 19, 2024, Plaintiff initiated this lawsuit. Dkt. No. [1]. He asserts claims for associational discrimination in violation of the ADA (Count One); FMLA interference (Count Two); FMLA retaliation (Count Three); race discrimination in violation of § 1981 (Count Four); and "gender and race" discrimination under Title VII (Count Four).

Defendant filed a motion for summary judgment of all claims. Dkt. No. [30]. The Magistrate Judge issued a Report and Recommendation in which he recommended that the motion be granted. Dkt. No. [40]. Plaintiff filed

[3] Lemons's race and sex were not disclosed in either statement of material facts. See generally Dkt. No. [38-3]; Dkt. No. [39-1].

objections, Dkt. No. [42]; Defendant filed a response brief, Dkt. No. [43]; and Plaintiff filed a reply brief, Dkt. No. [46].

## III. DISCUSSION

Plaintiff argues that the Magistrate Judge committed numerous errors that caused him to erroneously conclude that summary judgment was warranted on all of Plaintiff's claims. Because the FMLA claims are most central to this matter, the Court starts with them and then will turn to the claims asserted under the ADA, Title VII, and § 1981.

### A. FMLA Claims (Claims Two and Three)

Under the FMLA, an employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of his FMLA rights. 29 U.S.C. § 2615(a)(1). The employer also may not retaliate against an employee for engaging in a protected activity, such as exercising his right to request or take FMLA leave. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010).

#### *1. FMLA Retaliation Claim*

The Court first considers the FMLA retaliation claim. Where, as here, there is no direct evidence of retaliation, courts apply the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Munoz v. Selig Enters., Inc., 981 F.3d 1265, 1275 (11th Cir. 2020). To establish a prima facie case of retaliation under the FMLA, the plaintiff must show that (1) he was engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and

(3) there is some causal relationship between the two events. Lapham v. Walgreen Co., 88 F.4th 879, 889 (11th Cir. 2023). If the plaintiff can make the showing, the burden then shifts to the employer to articulate a non-retaliatory reason for the termination. Id. Once the defendant does so, the burden shifts back to the plaintiff to produce evidence that the employer's reason is pretextual and that the adverse employment action would not have taken place but for his exercise of his FMLA rights. Id. at 888-89. In the alternative, the plaintiff may defeat summary judgment of a claim of retaliation by presenting a "convincing mosaic" of circumstantial evidence of retaliatory intent. Ismael v. Roundtree, 161 F.4th 752, 762 (11th Cir. 2025).

Defendant argued that Plaintiff could not establish that his inclusion in the RIF had anything to do with his use of FMLA leave, much less that the leave was a but-for cause of his inclusion in the RIF. Dkt. No. [30-1] at 20-23. The Magistrate Judge agreed. Dkt. No. [40] at 59-62. Plaintiff objects, citing "a mountain of evidence" of causation and arguing that the Magistrate Judge improperly weighed conflicting evidence. Dkt. No. [42] at 2-4.

Plaintiff's argument is well-taken. A plaintiff can establish a causal connection by showing that the protected activity and the adverse employment action were not wholly unrelated. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Jones

v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1271 (11th Cir. 2017) (cleaned up). For purposes of this element, temporal proximity is "measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." Id. at 1272.

Mr. Osborne, who knew of Plaintiff's FMLA usage and made the decision to terminate Plaintiff's employment, fired Plaintiff on a day Plaintiff used intermittent FMLA leave. Dkt. No. [39-1] ¶¶ 12, 28, 39, 48, 49. Plaintiff also proffers an email exchange suggesting that his FMLA leave affected Mr. Osborne's decision to include him in the RIF: when Mr. Osborne asked Human Resources Manager Michael Green for feedback on an early draft of the post-RIF organizational chart, during a period of time when Plaintiff was making heavy use of FMLA leave, Mr. Green wrote back, "I'm not sure [Plaintiff] would be your 'best' Senior Operator. He seems to have a difficult time leading his shift as it is"—and 15 minutes later Mr. Osborne replied, "I don't want to keep [Plaintiff]" and stated (although he believed that Plaintiff was doing a "good job," there were "no issues" with his performance, and he "met the standard") that another employee was his pick for the senior operator position post-RIF. Dkt. No. [34-1] at 16-19; Dkt. No. [39-1] ¶¶ 34, 35; Dkt. No. [33-1] at 44; Osborne Dep. at 28, 128. Also, in conjunction with one of the amended schedules Mr. Osborne later sent to his supervisor, Mr. Osborne wrote that he had amended the schedule "to better give [Defendant] an advantage on continuing the line production if employees take vacation/sick/FMLA [leave]," explaining later that he did so

because "the machines have to run." Osborne Dep. at 78; Dkt. No. [34-1] at 8. Additionally, on a list of the employees to be laid off, Mr. Osborne wrote "first opportunity" next to Plaintiff's name, which he later explained meant that because Plaintiff was at the plant intermittently because of his wife's illness, Mr. Osborne would talk to him at the first opportunity he had. Osborne Dep. at 65.

Viewing this evidence in the light most favorable to Plaintiff, as the Court must do on Defendant's motion for summary judgment, this suggests that Mr. Osborn may not have included Plaintiff in the RIF had Plaintiff not taken FMLA leave. As a result, the Court finds that Plaintiff set forth evidence of a causal relationship and thus has overcome Defendant's challenge to his ability to establish a prima facie case of retaliation.

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to proffer a legitimate, nonretaliatory reason for including Plaintiff in the RIF. See Lapham, 88 F.4th at 889. This responsive burden is a "low hurdle"—a "simple burden of production that can involve no credibility assessment." Id. (cleaned up). Defendant explains that because of a significant slowdown in production resulting in 12 months of losses of $200,000 to $800,000 per month, Defendant downsized its production from four 12-hour shifts to two 12-hour shifts; that in doing so, it cut the number of production supervisor positions from four to two; that it kept the two most senior production supervisors in their positions; that it retained the third-most-experienced

production supervisor in a senior operator position due to his seniority and his experience with Defendant's vacuum metalizer machine; and that, because Plaintiff was the least senior production supervisor and could not run the vacuum metalizer machine, he was included in the RIF. Dkt. No. [30-1] at 4-6.

However, as Plaintiff pointed out both in response to the motion for summary judgment and in his objections to the Report and Recommendation, Defendant does not explain why Cortez Lemons was retained as a senior operator instead of Plaintiff, who had been promoted from the position and thus also appears to have been qualified to perform it. Dkt. No. [38] at 17; Dkt. No. [42] at 17-18; Dkt. No. [38-3] ¶ 4. Defendant therefore has not proffered a legitimate, nondiscriminatory reason for including Plaintiff in the RIF rather than placing him in the senior operator position that had been occupied by Cortez Lemons.

Since Defendant has failed to meet its burden of producing a legitimate, non-discriminatory reason for its decision to include Plaintiff in the RIF, the presumption of retaliation stands, and Defendant's motion for summary judgment of the claim fails. The Court therefore **SUSTAINS** Plaintiff's objection to the Report and Recommendation so far as it recommends granting Defendant's motion for summary judgment of the FMLA retaliation claim.

### ***2. FMLA Interference Claim***

An FMLA interference claim has only two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) the employer denied the employee that benefit. White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th

Cir. 2015). “An employer may be liable for interference despite good intentions; its ‘motives are irrelevant.’ ” Id. at 1191 n.2. The McDonnell-Douglas framework therefore does not apply to FMLA interference claims. Burt v. Publix Supermarkets, Inc., Civ. Action No. 1:25-cv-2932, 2026 U.S. Dist. LEXIS 173375, at *11 (N.D. Ga. Aug. 3, 2026); see also Lapham, 88 F.4th at 896 n.24; Wilkie v. Outokumpu Stainless USA LLC, No. 24-14109, 2025 WL 3079343, at *3 (11th Cir. Nov. 4, 2025). However, summary judgment of an FMLA interference claim may be warranted where the employer would have terminated the employee regardless of any FMLA leave. Lapham, 88 F.4th at 896; Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1236 (11th Cir. 2010).

Defendant did not argue on summary judgment that Plaintiff lacked evidence to support a claim for FMLA interference. Dkt. No. [30-1] at 18-20. Instead, it argued that Plaintiff had used intermittent FMLA leave numerous times over the four years leading up to his termination; that he was always reinstated in his position with no issue; that he was terminated in the July 2023 RIF when his position, along with 14 other production positions, was eliminated; and that he cannot show that his FMLA leave was a factor in his termination. Id. The Magistrate Judge found in Defendant’s favor on this claim as well. Dkt. No. [40] at 50-55. Plaintiff also argues that this was error. Dkt. No. [42] at 11-12.

The Court is again persuaded by Plaintiff’s objections. It is true that a plaintiff’s termination while on FMLA leave does not violate his right to reinstatement where the employer’s decision to discharge him was based on its

RIF policy and unrelated to his FMLA status. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353-54 (11th Cir. 2000); Connor v. Sun Tr. Bank, 546 F. Supp. 2d 1360, 1370-71 (N.D. Ga. 2008). However, this limitation is exercised as an affirmative defense. Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001). Thus, to defeat the interference claim on summary judgment, the employer must demonstrate that the decision to include the plaintiff in the RIF was legitimate and independent of the employee's FMLA leave. See O'Connor, id. Conversely, where there is a genuine factual dispute as to whether the plaintiff's employment was terminated due to the employee's FMLA leave, summary judgment of the interference claim is precluded. Strickland, 239 F.3d at 1208-09; Connor, 546 F. Supp. 2d at 1371-72.

A reasonable jury could find that Plaintiff's termination was due to his FMLA leave. There is no evidence showing that Plaintiff's position, per se, was eliminated; rather, two of four production supervisor positions were eliminated, another production supervisor was placed in a senior operator position, and Defendant has not explained why Plaintiff, who was qualified to work as a senior operator and was included in at least one draft of the post-RIF organizational chart, was passed over for the remaining post-RIF senior operator position in favor of another employee. See supra Part III.A.1. As discussed above, there is also evidence that Plaintiff's FMLA leave influenced the decision to include Plaintiff in the RIF. Id. Consequently, the Court concludes that Defendant has not

established as a matter of law that Defendant would have included Plaintiff in the RIF even if he had not taken FMLA leave.

The Court therefore **SUSTAINS** Plaintiff's objection to the portion of the Report and Recommendation in which the Magistrate Judge recommends granting summary judgment of the FMLA interference claim.

### B. Discrimination Claims (Counts I and IV)

#### *1. Associational Discrimination*

Associational discrimination is defined in the ADA as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To establish a prima facie case of associational discrimination under the ADA, a plaintiff must demonstrate that: (1) he was subjected to an adverse employment action; (2) he was qualified for the job at that time; (3) he was known by the employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances that raised an inference that the disability of the relative or associate was a determining factor in the decision. Hilburn v. Murata Elecs. N.A., Inc., 181 F.3d 1220, 1230-31 (11th Cir. 1999). Where, as here, there is no direct evidence of associational discrimination, the claim, much like the FMLA retaliation claim discussed above, is subject to the McDonnell-Douglas burden-shifting framework, Graves v. Brandstar, Inc., 67 F.4th 1117, 1123 (11th Cir. 2023), or, in the alternative, the plaintiff may defeat

summary judgment by setting out a "convincing mosaic" of circumstantial evidence of discriminatory intent, Sanichara v. GEICO Gen. Ins. Co., Case No. 8:24-cv-2635, 2026 WL 113612, at *7 (M.D. Fla. Jan. 15, 2026).

Defendant sought summary judgment of the claim on the fourth element, arguing that Plaintiff could not raise a reasonable inference that Plaintiff's wife's health condition was a determining factor in Mr. Osborne's decision to include Plaintiff in the RIF because Defendant had known of Plaintiff's wife's breast cancer diagnosis for years and Mr. Osborne's wife was also battling breast cancer. Dkt. No. [30-1] at 11. The Magistrate Judge agreed. Dkt. No. [40] at 21-32. Although Plaintiff argues that this was error, Dkt. No. [42] at 2-4, the undersigned also concludes upon de novo review that Plaintiff has not pointed to evidence that satisfies the fourth element.

In its motion for summary judgment, Defendant pointed to persuasive authority holding that there could be no adverse inference where, as here, the employer knew of the associate's disability for years before it undertook the adverse employment action, Stansberry v. Air Wis. Airlines Corp., 651 F.3d 482, 488 (6th Cir. 2011), Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 (3d Cir. 2009), even where the disability had recently worsened, Stansberry, id. In response to the motion for summary judgment, Plaintiff argued that his case was distinguishable from those cases because he not only relied on Defendant's longstanding awareness of his wife's cancer and the fact that it had worsened but also that his time away from work had increased significantly beginning in May

2023 due to his wife's worsening condition. Dkt. No. [38] at 11-14. He also pointed out that another colleague who had used FMLA leave was included in the RIF. Id. at 13.

The time away from work, even if Defendant did include Plaintiff in the RIF because of it, does not show that Defendant's decision was motivated by Plaintiff's wife's disability. Nor does the termination of the other employee who had used FMLA leave. The associational discrimination provision "was intended to protect qualified individuals from adverse job actions based on unfounded stereotypes and assumptions arising from the employees' relationships with particular disabled persons." EEOC v. STME, LLC, 938 F.3d 1305, 1318 (11th Cir. 2019) (cleaned up). The time off to care for his wife is the basis for Plaintiff's *FMLA* claims; it does not show that Defendant included Plaintiff in the RIF because of unfounded stereotypes or assumptions on Defendant's part about care required by disabled persons. See Erdman, 582 F.3d at 511.

The Court therefore finds that the Magistrate Judge did not err in concluding that Plaintiff failed to overcome Defendant's challenge to his ability to establish a prima facie case of associational discrimination under the ADA. Plaintiff has also failed to proffer a convincing mosaic of circumstantial evidence of associational discrimination. Plaintiff's objections regarding the Magistrate Judge's associational-discrimination determination are therefore **OVERRULED**.

### 2. *Discrimination under Title VII and § 1981*

The Magistrate Judge also concluded that Plaintiff could not show evidence sufficient to enable a reasonable jury to find in his favor on his claims of race discrimination under § 1981 or race or gender discrimination under Title VII. Dkt. No. [40] at 32-37. To establish a prima facie case of discrimination in the context of a RIF, "the employee must prove that (1) []he is a member of a protected class and was adversely affected by an employment action; (2) []he was qualified to assume another position at the time of the discharge; and (3) the employer intended to discriminate in reaching the employment decision at issue." Felder v. Bradford Health Servs., 493 F. App'x 17, 19 (11th Cir. 2012). Claims asserted under Title VII and § 1981 are also subject to the McDonnell-Douglas burden-shifting framework and the alternative "convincing mosaic" analysis. Poer v. Jefferson Cnty. Comm'n, 100 F.4th 1325, 1336-37 (11th Cir. 2024).

In his objections, Plaintiff complains that the Magistrate Judge misinterpreted his argument, which was that he met his burden of showing intentional discrimination because he belongs to two protected classes as an African-American male, his position was eliminated, he was not retained as a senior operator, and his employment was terminated. Dkt. No. [42] at 4-5. He also argues that the Magistrate Judge should not have excluded the two white, male production supervisors as suitable comparators on grounds that they had greater seniority. Id. at 5.

The intersectionality argument frankly makes little sense in the context of this case, particularly since the production supervisor who was retained as a senior operator was, like Plaintiff, an African-American man, and Plaintiff does not explain how his intersectionality theory should impact the Court's analysis. Additionally, the Court finds nothing in the record to show that sex or race had anything to do with any adverse action taken against Plaintiff. Thus, he cannot establish a prima facie case of sex discrimination, race discrimination, or sex-plus-race discrimination. Nor does the Court find record evidence of sex discrimination, race discrimination, or sex-plus-race discrimination that would present a "convincing mosaic" of circumstantial evidence of discriminatory intent.

The Court therefore **OVERRULES** the objections relating to Plaintiff's claims of sex discrimination, race discrimination, and sex-plus-race discrimination.

## IV. CONCLUSION

In accordance with the foregoing, the Magistrate Judge's Report and Recommendation, Dkt. No. [40], is **ADOPTED IN PART AND REJECTED IN PART**: the Court **ADOPTS** as its opinion the portions of the Report and Recommendation where the Magistrate Judge recommends granting the motion for summary judgment of the claims Plaintiff asserts under the ADA, Title VII, and § 1981 (Counts One and Four), and **REJECTS** the portions of the Report and Recommendation where the Magistrate Judge recommends granting the motion

for summary judgment of the claims Plaintiff asserts under the FMLA (Counts Two and Three). The motion for summary judgment, Dkt. No. [30], is therefore **GRANTED IN PART AND DENIED IN PART**: the Court **GRANTS** summary judgment of Counts One and Four and **DENIES** summary judgment of Counts Two and Three.

The parties are **ORDERED** to mediation. They are **DIRECTED** to confer and notify the Court within **14 DAYS** of the entry of this Order whether they prefer private mediation or mediation before a Magistrate Judge.[4] If the parties are opposed to mediation, they shall provide their reasons. The parties shall notify the Court whether the case was resolved during mediation the day following the mediation.

**IT IS SO ORDERED**, this 28th day of September, 2026.

**Leigh Martin May**
**Chief United States District Judge**

[4] Magistrate Judge mediation is included as a service as part of the case. No additional court fee is required.